IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSHUA J. RITCHOTT,<br><br>    Defendant. | No. CR17-4021-LTS<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

## I.    INTRODUCTION

This case is before me on defendant Joshua J. Ritchott's motions (Doc. Nos. 95, 101, 112)[1] for compassionate release. The Government has filed a resistance (Doc. No. 115). Oral argument is not necessary. *See* Local Rule 7(c).

## II.    BACKGROUND

On August 31, 2017, Ritchott pleaded guilty to one count of conspiracy to distribute and possess 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 50 grams or more or actual (pure) methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). *See* Doc. No. 55. On May

---

[1] Ritchott filed a pro se motion (Doc. No. 95) for compassionate release on May 8, 2020, as well as a supplement/addendum (Doc. No. 96). I appointed counsel for Ritchott and he filed an amended motion (Doc. No. 101) through counsel on June 1, 2020. Ritchott then sought release of his medical records and submitted those along with his disciplinary history (Doc. No. 111-1 and 111-2). He filed a second amended motion (Doc. No. 112) on June 15, 2020.

22, 2018, I sentenced Ritchott to 156 months' imprisonment consisting of a 117-month term imposed on Count 1 and a 39-month term imposed on Count 3 of the Superseding Indictment, to be served consecutively. *See* Doc. No. 82.

According to the online Bureau of Prisons (BOP) inmate locator, Ritchott is currently at Pekin FCI and his projected release date is April 16, 2028.[2]

### III.   COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is extremely limited. One way a court may modify a sentence is through "compassionate release" as outlined in 18 U.S.C. § 3582(c)(1)(A), which was recently modified by the First Step Act of 2018 (FSA). *See* Pub. L. No. 115-391, § 603. In the past, 18 U.S.C. § 3582(c)(1)(A) permitted a court to reduce a defendant's term of imprisonment only upon the motion of the Director of BOP. The FSA modified § 3582(c)(1)(A) such that a defendant may now directly petition the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See Mohrbacher v. Ponce*, No. CV18-00513, 2019 WL 161727, at *1 (C.D. Cal. Jan. 10, 2019) (discussing modifications made to § 3582(c)(1)(A) by the FSA); *see also United States v. Perez-Asencio*, No. CR18-3611, 2019 WL 626175, at *2–3 (S.D. Cal. Feb. 14, 2019).

If a defendant fully exhausts administrative remedies, the court may, upon motion of the defendant, reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the court finds that:

>   (i) extraordinary and compelling reasons warrant such a reduction; or
>
>   (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the

---

[2] Ritchott states his "home detention eligibility date" could be as early as October 16, 2027, based on an updated sentencing computation data sheet. *See* Doc. No. 96.

offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . .

18 U.S.C. § 3582(c)(1)(A). Ritchott does not meet the requirements of § 3582(c)(1)(A)(ii). He is under 70 years of age and has not served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c). Accordingly, Ritchott's only possible avenue for relief is § 3582(c)(1)(A)(i).

The starting point in determining what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) is the Sentencing Guideline discussing compassionate release issued by the United States Sentencing Commission. *See* U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018); *see also United States v. Hall*, No. CR98-7, 2019 WL 6829951, at *3 (E.D. Ky. Dec. 13, 2019); *United States v. Rivernider*, No. CR10-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019). The Guideline provides that extraordinary and compelling reasons exist in the following circumstances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

This Guideline predates the FSA and has "not been amended to reflect that, under the FSA, a defendant may now move for compassionate release after exhausting administrative remedies." *Rivernider*, 2019 WL 3816671, at *2. Courts are split on whether the policy statement is binding because it predates the FSA's changes to 18 U.S.C. § 3582(c)(1)(A). A number of district courts have concluded that Guideline § 1B1.13 cmt. n.1 does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See, e.g., United States v. Rodriguez*, CR17-00021, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Urkevich*, No. CR03-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Brown*, No. CR05-00227, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. Fox*, CR14-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, CR13-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. CR05-458, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019). Other courts have concluded that extraordinary and compelling reasons exist only if they

4

are included in the Guideline. *See, e.g., United States v. Lynn*, No. CR89-0072, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019).

As I have previously stated, I agree with those courts that have found that although the Guideline provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the recent statutory changes. *See United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *see also Rodriguez*, 2019 WL 6311388, at *7 (Congress knew that the BOP rarely granted compassionate release requests prior to the FSA, and the purpose of the FSA is to increase the number of compassionate release requests granted by allowing defendants to file motions in district courts directly even after the BOP denies their request); *Brown*, 2019 WL 4942051, at *3 (same).

## IV. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

Ritchott filed his pro se motion (Doc. No. 95) for compassionate release on May 8, 2020. Ritchott states he filed a request for compassionate release with his counselor on April 13, 2020. Doc. No. 95 at 12, 23. Attached to his motion is an "Inmate Request to Staff" requesting home confinement pursuant to the CARES Act and a hand-written Certificate of Service stating that on May 4, 2020, Ritchott served a copy of an administrative request for compassionate release on the warden of Pekin FCI by giving it to the Unit Team. *See* Doc. No. 82 at 23-24. In his second amended motion (filed on June 15, 2020), he stated he had not received a decision or denial of his request. *See* Doc. No. 112 at 2-3. The Government acknowledges that more than 30 days have passed since the receipt of Ritchott's request by the warden at that the court has the authority to rule on the motion. *See* Doc. No. 115 at 9-10. I agree and find Ritchott has met the exhaustion requirement.

5

## B. Extraordinary and Compelling Reasons

Ritchott argues that the threat the COVID-19 pandemic poses to him, in light of his particular health issues, constitutes extraordinary and compelling reasons. Doc. No. 101 at 2. Ritchott states he has been diagnosed with asthma, chronic bronchitis and pneumonia,[3] all of which put him at a higher risk of suffering serious complications in the event he contracts COVID-19. The Government argues that the mere existence of COVID-19, as a general threat to every non-immune person, is insufficient to warrant a sentence reduction. Doc. No. 115 at 13. It acknowledges that the CDC lists people with "chronic lung disease or moderate to severe asthma" as being at high risk for severe illness from COVID-19. Doc. No. 115 at 15.[4] Therefore, it notes I could conclude that Ritchott is "suffering from a serious physical or medical condition" under USSG § 1B1.13, cmt. n.1(A)(ii), but argues Ritchott's medical condition does not rise to the level of severity required under the policy statement. *Id.* at 15-16. Under the policy statement, the condition must be one "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1(A)(ii). The Government argues Ritchott can provide adequate self-care and notes that his medical conditions are

---

[3] Ritchott's 2020 medical records reflect a diagnosis of asthma, for which he has been prescribed an inhaler, but do not include any mention of pneumonia or bronchitis. *See* Doc. No. 111-2. Indeed, he denied any respiratory medical history during a dental visit on March 24, 2020. *Id.* at 22. Ritchott states in his pro se motion that he has a "long history" of respiratory issues but that he has not had any major issues in the past few years while incarcerated. Doc. No. 95 at 12-13. He states he has been diagnosed in the past with pneumonia, chronic bronchitis and asthma, and was hospitalized for chronic bronchitis when he was young. *Id.*

[4] Quoting Centers for Disease Control, *People Who Are at Higher Risk for Severe Illness* at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

well controlled by medications. Doc. No. 115 at 16. Further, there were no reported positive cases of COVID-19 at Pekin FCI as of the date of filing.[5]

There appears to be no dispute that Ritchott's medical condition of asthma, and perhaps other lung conditions, would increase his risk of serious illness if he were infected with COVID-19. While I appreciate that the BOP has taken many measures to prevent the transmission of COVID-19 among its inmate population,[6] the virus has nonetheless spread through many BOP facilities.[7] As of July 16, 2020, two inmates had tested positive for COVID-19 at Ritchott's facility, Pekin FCI.[8] Thus, COVID-19 is present at Pekin FCI and Ritchott is at risk of contracting it. Ritchott's asthma, and reported history with lung-related illness, when viewed in the context of the current COVID-19 pandemic, at least arguably constitute an extraordinary and compelling reason for release. Therefore, I will consider whether the remaining factors support granting Ritchott's motion.

---

[5] Pekin FCI now reports two positive inmate cases. *See Covid-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 16, 2020).

[6] According to the BOP's website, those measures have included limiting inmate movement within each facility and between facilities, suspending visits, suspending staff training and travel, screening staff and inmates for COVID-19 symptoms and modifying operations to maximum social distancing to the extent possible. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 16, 2020).

[7] Other BOP facilities have experienced COVID-19 outbreaks. For example, as of July 16, 2020, 678 inmates, or 60 percent of inmates, have tested positive for COVID-19 at Butner Low FCI, and 16 of those have died. At Elkton FCI, 990 inmates (45 percent of inmates) have tested positive, and 9 of those have died. At Terminal Island, 673 inmates (70 percent of inmates) have tested positive, and 10 of those have died. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 16, 2020).

[8] *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 16, 2020).

*C.     Section 3553(a) Factors and Danger to Community*

Guideline § 1B1.13(2) provides that compassionate release is appropriate only where "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Additionally, § 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. Section 3553(a) requires that I consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]
>
> (5) any pertinent policy statement [issued by the Sentencing Commission . . .']
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Ritchott's earliest anticipated release date (to home confinement) is in 2027. Doc. Nos. 96 at 2; 112 at 1; 95 at 9. He states that as of April 10, 2020, he had 97 months left on his sentence of 156 months. Doc. No. 95 at 9. Therefore, he has served less than half of the sentence imposed. While incarcerated, he has had one disciplinary incident

8

on January 24, 2017, involving contraband found in a cell he shared with another individual.[9]  Doc. Nos. 95 at 8; 111-1.  He has taken and completed various education courses while incarcerated, completed the non-residential drug treatment program and works as a tutor.  *See* Doc. No. 85 at 7-8, 26-27.  He notes that he was categorized as a career offender due to two convictions that took place ten and seven years prior to the instant offense, but notes he was also an addict and user of several different illegal substances.  Doc. No. 112 at 4.

The Government argues that the § 3553(a) factors strongly disfavor a sentence reduction.  Doc. No. 115 at 17.  It relies on Ritchott's criminal history, including the predicate offenses in 2007 and 2010 that led to his career offender status.  These offenses were for possession of a controlled substance with intent to distribute and conspiracy in violation of the Controlled Substance Act (2007 conviction) and assault and battery (2010 conviction).  *Id.* (citing Doc. No. 68 at 15-17).  Ritchott has two other convictions for theft (2015) and violation of a no contact or protective order (2016).  The Government argues the nature of the instant offense is also aggravating.  Between 2015 and 2017, Ritchott distributed at least 10 pounds of methamphetamine.  *Id.* (citing Doc. No. 68 at 5, 12).  Ritchott worked proactively with law enforcement until they discovered he had been trafficking drugs and possessing firearms while working as a confidential informant.  *Id.* (citing Doc. No. 68 at 6-7, 9-10).  According to another cooperator, Ritchott referred to the gun he carried around as a "cop killer" and that during a verbal altercation, he threatened the cooperator with a firearm.  *Id.* (citing Doc. No. 68 at 10).

As discussed above, Ritchott is at an increased risk of severe illness from COVID-19, but Pekin FCI has had only two confirmed positive cases of COVID-19.  More importantly, releasing Ritchott now, having served less than half of his 156-month

---

[9] Ritchott states he appealed the guilty finding and exhausted administrative remedies.  He denies knowledge of the contraband or how it came to be found in the cell but has successfully completed the imposed sanctions.  Doc. No. 95 at 8.

9

sentence would undermine the need for the sentence imposed, including the need to reflect the seriousness of the offense, afford adequate deterrence and protect the public from further crimes. While Ritchott has shown positive signs of rehabilitation during his time in the BOP system, those do not outweigh the above sentencing concerns, especially considering his career-offender status at the age of 32.

The COVID-19 pandemic has clearly increased the danger posed to individuals who, like Ritchott, suffer from preexisting conditions. However, "the relief he seeks is an inappropriate remedy in these circumstances." *See United States v. Garcia*, No. 16-cr-719 (RJS), 2020 WL 2539078, at *3 (S.D.N.Y. May 19, 2020); *see also United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (acknowledging that compassionate release should not "undermine the goals of the original sentence"). In light of the factors set forth in 18 U.S.C. § 3553(a), Ritchott is not entitled to compassionate release.

## V. CONCLUSION

For the foregoing reasons, Ritchott's motions (Doc. Nos. 95, 101, 112) for compassionate release are **denied**. The Clerk's office is directed to provide a copy of this order to the institution where Ritchott is incarcerated.

**IT IS SO ORDERED.**
**DATED** this 20th day of July, 2020.

_____
Leonard T. Strand, Chief Judge